IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GALE F. HERBOLD,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | CV 12–135–M–DLC-JCL<br><br>FINDINGS & RECOMMENDATION |

Plaintiff Gale Herbold brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

Herbold protectively filed for benefits in December 2008, alleging disability since September 24, 2007, due to "lumbar spine impairment, fibromyalgia, hepatitis C, left knee impairment, depression, hypertensive cardiovascular disease, anxiety, digestive disorder, sleep apnea, cirrhosis, precancerous throat condition, tuberculosis, and right ankle impairment." Tr. 187. Herbold's application was

PAGE 1

denied, and he requested an administrative hearing. Tr. 107-14. A hearing was held, and on February 2, 2011, the ALJ issued a decision finding that Herbold was not disabled within the meaning of the Act. Tr. 13-22. The Appeals Council denied Herbold's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 4-9. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Herbold was 55 years old at the time of his alleged onset date in September 2007, and 59 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings

PAGE 2

"if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the

PAGE 3

claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

Following the steps in the sequential evaluation process, the ALJ first found that Herbold had not engaged in substantial gainful activity since his September 24, 2007, alleged onset date. Tr. 15. The ALJ found at step two that Herbold suffered from the following severe impairments: degenerative disc disease, fibromyalgia, status post right shoulder surgery, and sleep apnea. Tr. 15. At step

three, the ALJ determined that Herbold did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. Tr. 17. The ALJ also found that while Herbold's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms" were not entirely credible. Tr. 19. The ALJ ultimately determined that Herbold retained the residual functional capacity to perform a range of medium work, and could perform his past relevant work as a buyer, janitor, and customer service representative. Tr. 19-20.

### A. Severe Impairments

Herbold argues the ALJ erred at step two by not including his depression and lower extremity problems among the list of his severe impairments.

An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The claimant bears the burden of establishing the severity of an alleged impairment by providing medical

PAGE 5

evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

The ALJ acknowledged that Herbold suffered from depression, but found the impairment did not cause more than minimal limitation on his ability to perform basic mental work activities and was therefore nonsevere. Tr. 16. This finding was supported by substantial evidence in the record. Herbold's medical records reflect that he had a history of depression over the years, but the impairment was well controlled on medication. As the ALJ noted, for example, medical records from Herbold's long-time treating physician, Dr. Richard Wise, reflect that his depression was "stable" on medication in the spring of 2007. Tr. 16, 339-45. In August 2007, Dr. Wise described Herbold's depression as "improved." Tr. 419. By September 2007 – the month of Herbold's alleged onset date – Dr. Wise reported that Herbold's depression was "much improved." Tr. 417. Dr. Wise's subsequent treatment notes are much the same. He wrote in February 2008 that Herbold's depression was "much improved on Cymbalta 60 mg daily." Tr. 405. In May, August, and December 2008, Dr. Wise reported that Herbold was not clinically depressed. Tr. 383, 389, 401. In late 2009 and early 2010, Dr. Wise similarly found that Herbold exhibited "no anxiety or depression." Tr. 637 639, 641. Medical expert Dr. Thomas Atkin testified at the hearing that

PAGE 6

Herbold's depression would not have caused any significant work-related limitations. Tr. 79. Dr. Wise's medical records and Dr. Atkins's testimony amply support the ALJ's assessment that Herbold's depression was not severe.

Herbold nonetheless argues the ALJ erred because the vocational expert testified that he would be unable to work even if his depression caused only mild difficulties in maintaining concentration, persistence, and pace. At the hearing, Herbold's attorney presented the vocational expert with the following question: "[I]f an individual had mild difficulties maintaining concentration, persistence, or pace, and by mild, let's define that as 25 percent of the day, could such an individual sustain employment in the competitive work place..."? Tr. 84. The vocational expert answered that an individual would not be able to work if he was "off task" for twenty-five percent of the day. Tr. 84.

As the records discussed above reflect, however, there is no evidence that Herbold's depression would have caused him to be "off task" for that amount of time each day. To the contrary, the medical records amply support the ALJ's determination that Herbold's depression did not interfere to any significant degree with his ability to perform basic mental work activities.

Herbold also argues that the ALJ erred by not categorizing his "lower extremity conditions" as severe impairments. Dkt. 12, at 10. His argument on this

PAGE 7

point is cursory at best. He agrees that "these medical problems considered alone might not be severe" but claims that when considered in conjunction with his fibromyalgia, "they might well be." Dkt. 12, at 10-11.

The ALJ recognized that Herbold had a "history of right ankle fracture" and "a left knee impairment," but permissibly found based on his review of the medical evidence that they did not cause more than a minimal limitation on his ability to perform work-related activities. Tr. 15. The ALJ cited medical records showing that Herbold recovered well from the broken ankle he suffered in 2006. Tr. 15, 326-27. The ALJ noted that in October 2005, Herbold was cleared to return to work following his left knee injury. Tr. 15, 272. The ALJ's step-two determination is supported by substantial evidence in the record.

To the extent Herbold argues the ALJ erred by not accepting that he suffered from fibromyalgia, he is mistaken. The ALJ specifically identified fibromyalgia as one of Herbold's severe impairments. Tr. 15. While the ALJ agreed that Herbold's fibromyalgia was severe, he found Herbold's subjective pain testimony only partially believable. Herbold does not challenge that adverse credibility determination on appeal.

### B. Treating Physician

In May 2010, Dr. Wise wrote a letter in support of Herbold's application for disability benefits and completed a multiple impairment questionnaire. Tr. 578-89. Herbold argues the ALJ did not cite sufficiently specific and legitimate reasons for rejecting Dr. Wise's opinion as set forth in that letter and questionnaire.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2).

To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In his letter dated May 30, 2010, Dr. Wise wrote that Herbold was "very unlikely to recover gainful employment skills." Tr. 579. Dr. Wise "perceive[d] no significant improvement that would allow [Herbold] to rejoin the work force in any meaningful way." Tr. 579. In the multiple impairment questionnaire he completed on May 27, 2010, Dr. Wise identified physical limitations that were incompatible with the ability to perform even sedentary work. For example, he found that Herbold could sit for no more than two hours in an eight-hour day, and stand/walk for no more than two hours. Tr. 584. Dr. Wise also indicated that Herbold would have to get up and move around every 15 minutes. Tr. 584.

The ALJ acknowledged Dr. Wise's assessment of Herbold's limitations, but rejected it on the primary ground that it was not consistent "with the rest of the medical evidence." Tr. 20. Included among the "rest of the medical evidence" were Dr. Wise's own treatment notes, which reflected that Herbold was capable of doing more than Dr. Wise's May 2010 opinions suggested. As the ALJ noted, for example, Dr. Wise remarked on December 3, 2009, that Herbold was doing "suprisingly well" and he was able to do some walking. Tr. 19, 639.

Many of Dr. Wise's remaining treatment notes reflected similar improvement. In November 2007 – just a couple of months after the alleged onset

date – Dr. Wise wrote that Herbold had "stabilized on methadone," felt much better, and was applying for jobs. Tr. 408. In May 2008, Dr. Wise found that Herbold's muscle strength was "a 5 out of 5 and equal in both lower extremities." Tr. 399. Several months later, in September 2008, Dr. Wise noted that Herbold's function had improved and he was applying for jobs and going to church. Tr. 387. In October 2009, Herbold reported to Dr. Wise that he was able to walk thirty minutes a day, five days a week, and by February 2010 his stated goal was "to climb Big Mountain." Tr. 637, 643. The ALJ appropriately discounted Dr. Wise's May 2010 opinions on the ground that they were not supported by the medical evidence in the record, including his own treatment notes.

Herbold argues the ALJ erred by instead crediting the opinions of the state agency physician Dr. Tim Schofield who indicated that Herbold was capable of performing a range of medium work. Tr. 425-32. Herbold argues that Dr. Schofield's March 2009 assessment was not as detailed or current as Dr. Wise's May 2010 assessment, and failed to account for the fact that he was later diagnosed with fibromyalgia. While Dr. Schofield's report preceded Dr. Wise's by roughly a year, it was well within the relevant time period. Herbold claims he became disabled in September 2007, and the ALJ was entitled to rely on Dr. Schofield's March 2009 opinion. Contrary to Herbold's argument, Dr. Schofield

PAGE 11

specifically considered his history of "fibromyalgia syndrome" in reaching his opinion. Tr. 426. The ALJ permissibly credited Dr. Schofield's opinion and considered Dr. Wise's subsequent treatment notes in finding that Herbold was capable of medium work. As discussed above, the ALJ permissibly found that Dr. Wise's May 2010 opinions were not supported by the other medical evidence in the record, including his own treatment notes.

### C. Lay Testimony

Herbold argues the ALJ did not provide germane reasons for discounting a lay witness statement provided by his neighbor. It is well-established that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

On May 22, 2009, Herbold's neighbor, Dennis Latimer, wrote a letter in support of Herbold's application for benefits. Latimer explained that he had been

PAGE 12

Herbold's neighbor for ten years, and detailed the personal setbacks Herbold had experienced during that period, including job layoffs and the death of his mother. Tr. 240. Latimer explained that Herbold had "tried and tried to seek and hold down other employment but [could] not sustain employment due to his health conditions." Tr. 240. Latimer elaborated that he had seen Herbold "in much pain and suffering and it is not a condition anyone could work a forty hour week with." Tr. 240.

The ALJ considered Latimer's written statement, but appropriately gave it little weight because the issue of "whether the claimant is disabled is a finding reserved for the Commissioner." Tr. 20. Latimer's written statement says little to nothing about his personal observations of Herbold's specific limitations, activities, or abilities. Instead, Latimer simply states that he believes Herbold is incapable of working due to the pain and suffering he has endured. As the ALJ correctly noted, however, the question of whether Herbold is capable of working is for the Commissioner to decide. 20 C.F.R. §§ 404.1527(e), 416.927(c); S.S.R. 96-5p. This was a sufficiently germane reason for discounting Latimer's written statement.

### D. Past Relevant Work

The ALJ ended his analysis at step four, finding based on the vocational

PAGE 13

expert's testimony that Herbold was capable of performing past relevant work as a buyer, janitor, and customer service representative. Tr. 20. The vocational expert categorized all three positions as sedentary to light, as actually performed. Tr. 260. The buyer and customer service representative positions as generally performed also qualified as sedentary to light work. Tr. 260. Based on the vocational expert's testimony, the ALJ found that Herbold, who retained the residual functional capacity for medium work, could perform those light and sedentary level jobs.

Herbold argues it was somehow erroneous for the ALJ to find him capable of performing light to sedentary work when he retained the capacity for medium work. But "[t]he functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work." 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 203.00. Because the ALJ concluded Herbold was capable of medium work, he appropriately found him capable of performing past relevant work that qualified as light and sedentary. To the extent Herbold argues the ALJ erred in finding that he retained the residual functional capacity for medium level work, he is mistaken. As discussed above, that determination is supported by substantial evidence of record and free of legal error.

## IV. Conclusion

For all of the above reasons,

IT IS RECOMMENDED that Herbold's motion for summary judgment be DENIED, the Commissioner's motion for summary judgment be GRANTED, and the Commissioner's decision be affirmed.

DATED this 27th day of June, 2013

Jeremiah C. Lynch
United States Magistrate Judge